UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TESSA RHODES, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

MICROSOFT CORPORATION,

        Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff Tessa Rhodes brings this Class Action Complaint, individually and on behalf of all others similarly situated (the "Class Members") against Defendant Microsoft Corporation ("Defendant" or "Microsoft"), and alleges as follows, based upon information and belief, investigation of counsel, and the personal knowledge of Plaintiff.

## <u>NATURE OF CASE</u>

1.     Microsoft Shopping is a free browser extension and application that claims to help users find deals online: "Shop smart and save more. Microsoft Shopping finds you the best price."[1]

2.     To earn these savings, online shoppers simply had to install the Microsoft Shopping browser extension or application, and Microsoft Shopping would do the rest of the work, automatically search for, testing, and applying coupon codes, if available, when shoppers checked

---

[1] https://chromewebstore.google.com/detail/microsoft-shopping/gkpkfpbiplhcnbfakenlikblbdgllhoh?hl=en (last visited February 14, 2025).

CLASS ACTION COMPLAINT - 1

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

out online. "Microsoft Shopping has coupons from merchants across the web. As you add items to your cart, the extension actively scans the internet for available coupons and discount codes to apply when you check out."[2]

3.      Microsoft Shopping's promise that it is the "best place to help you save time and up to $400 a year* when online shopping" has proved enticing to savings-conscious consumers, who have flocked to the application. As of January 2025, Microsoft Shopping is estimated to have at least hundreds of thousands of users—in fact, the Microsoft Edge browser comes pre-installed with the Microsoft Shopping extension.

4.      Behind the scenes, however, Microsoft Shopping has built its coupon code tool on practices far more pernicious than a simple promise to save shoppers money. In reality, Microsoft Shopping has been diverting millions of dollars from online creators to its own coffers with an online cookie bait and switch.

5.      To effectuate this scheme, Microsoft Shopping has employed a tactic known as "cookie stuffing," a form online marketing fraud where a malicious affiliate marketer—here, Microsoft Shopping—secretly places tracking cookies on a user's browser, making it appear as if the user came to a website through *its* affiliate link, even if the user did not, allowing Microsoft Shopping to fraudulently earn commission on sales that it did not actually generate by driving traffic to the site. This deceptive tactic has allowed Microsoft Shopping to profit off of the promotional efforts of online content creators like Plaintiff and Class Members, by maliciously replacing the legitimate affiliate cookies of Plaintiff and Class Members with Microsoft Shopping's own affiliate cookies just as users begin the checkout process.

6.      Plaintiff and Class Members are online creators who earn revenue by promoting

---

[2] *Id.*

CLASS ACTION COMPLAINT - 2

products or services. Plaintiff and Class Members create "content," such as videos, infographics, posts, tweets, and "stories," promoting particular products or services of online merchants, and then share that content on their social media accounts to be viewed by Internet users. These content creators will typically include an "affiliate link" to the product or service that they are promoting. The affiliate link will redirect a viewer of a content creator's online post to the website of the online merchant that is selling the product or service that is being promoted.

7.    When a user clicks an affiliate link to purchase a product or service, the content creator who promoted the product earns a commission for referring the consumer to that store. This process is known as "affiliate marketing," and amounts to an industry valued at roughly $10 billion dollars in the United States alone.

8.    Affiliate marketing works as follows: First, a content creator recommends a product or service in an online post, accompanied by an affiliate link to purchase the recommended product or service. Next, a user who views that online content and decides she wants to purchase the recommended product, clicks on the affiliate link to visit the store's webpage and purchase the product. After the user clicks on a content creator's affiliate link, underneath the hood, an "affiliate tracking cookie" or "tracking tag" is embedded in the URL on the store's webpage and stored in the user's browser. Finally, the user completes her purchase, and the affiliate tracking cookie lets the store know who should get the commission for driving the sale.

9.    Enter Microsoft Shopping. If a user has Microsoft Shopping installed in their browser and chooses to use Microsoft Shopping to search for discounts, under Microsoft's scheme, Microsoft replaces the tracking cookie associated with the content creator's affiliate link with a new tracking cookie that erases all traces of the original content creator. As a result of the Microsoft scheme, Microsoft is credited as the source of the sale, and thus receives any commission that is generated. Microsoft accomplishes this by discreetly opening a small new tab when a user chooses to "apply

CLASS ACTION COMPLAINT - 3

discounts" using Microsoft, which acts like a simulated referral click, as though Microsoft was the one to refer the purchaser to the website, even though the user was already on the website and at the checkout page. Once Microsoft Shopping has finished "stuffing" its cookie, the tab automatically closes.

10.    In other words, when a consumer clicks on a content creator's affiliate link but later uses Microsoft, the creator's affiliate cookie is overwritten by Microsoft's own cookie. As a result, Microsoft claims 100% of the commission for the sale originally driven by the content creator.

11.    Most affiliate marketing revenue is earned through a process called "last click attribution" which means that final link a user apparently clicks before purchasing the product— here, because of its unlawful scheme, Microsoft—will receive 100% of the commission generated by the affiliate link.

12.    By implementing this malicious cookie-stuffing scheme, Microsoft is able to systematically poach the commissions of Plaintiff and other online content creators.

13.    In effect, the content creator who promoted the online merchant's product or service in the first instance, referred their viewers directly to that online merchant's website, and ultimately had their viewers purchase that online merchant's product or service is deprived of their commission; while Microsoft, a multi-billion dollar corporation, walks away with the entire commission.

14.    As a result of Defendant's scheme, Plaintiff and Class Members have incurred, and will continue to incur, damages from the theft of their commission payments.

15.    Accordingly, Plaintiff brings this action against Defendant, seeking redress for Defendant's unlawful conduct and asserting claims for: (1) unjust enrichment; (2) interference with a prospective economic advantage; (3) conversion; (4) the Computer Fraud and Abuse Act; (5) the California Comprehensive Computer Data Access & Fraud Act; and (6) the California Unfair Competition Law.

CLASS ACTION COMPLAINT - 4

16.     Through these claims, Plaintiff seeks damages in an amount to be proven at trial, as well as injunctive and other equitable relief, including the enjoinment of Microsoft from continuing to divert the commission payments of Plaintiff and Class Members.

## THE PARTIES

17.     Plaintiff Tessa Rhodes is a natural person residing in the State of California.

18.     Microsoft is a Washington corporation with a principal place of business at 1 Microsoft Way, Redmond in King County, Washington.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1367.

20.     This Court also has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because Plaintiff and at least one member of the putative Class, as defined below, is a citizen of a different state that Defendant, there are more than 100 putative class members, and the amount in controversy exceeds $5 million exclusive of interest and costs.

21.     This Court has general personal jurisdiction over Defendant because Microsoft operates in and is headquartered in in this District and has sufficient minimum contacts with Washington such that it has purposefully availed itself of the state's laws.

22.     Venue is proper in this Court under 28 U.S.C. § 1391(b) to because a substantial part of the events giving rise to this action occurred in this District and Defendant has harmed Class Members residing in this District.

## Microsoft Shopping

23.     Microsoft is a multinational technology company that develops and sells software, services, and hardware. Microsoft launched Microsoft Shopping—initially for Microsoft's Edge web browser—in November 2020.

CLASS ACTION COMPLAINT - 5

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

24.     Microsoft Shopping is a free browser extension available on at least Google Chrome and Microsoft Edge, among other internet browsers, that allows users to see the prices for a particular product on multiple websites at the same time, saving them the trouble of searching each of those websites one by one. Microsoft advertises that its shopping extension saved users on average $431 a year.[3]

25.     A browser extension is a downloadable piece of software that a user can add to their web browser to extend that browser's capabilities beyond its default features.[4] More specifically, a web browser extension is a small software program that operates within the confines of a web browser, extending that web browser's capabilities beyond that Internet browser's default features. Some common examples of browser extensions include ad-blockers or website password managers.

26.     Microsoft's professed goal with Microsoft Shopping is to provide a better service to its customers by making online shopping easier and cheaper. "When you visit a retailer site, Microsoft Edge will alert you if there are any coupons available for that site. You can view the list of coupons at any time by clicking on the blue shopping tag in the address bar. At checkout, you can copy and paste a code, or Microsoft Edge can automatically try them all to determine which one will save you the most."[5]

27.     An Internet user can access the Microsoft Shopping web extension through the Microsoft Edge browser where it comes pre-installed or add Microsoft Shopping to their respective web browser for free either by searching for "Microsoft Shopping" in their web browser's browser

---

[3] https://www.microsoft.com/en-us/edge/features/shopping?form=MA13FJ (last visited February 14, 2025).

[4] https://brave.com/learn/what-are-web-browser-extensions/ (last visited February 14, 2025).

[5] https://techcommunity.microsoft.com/discussions/edgeinsiderannouncements/introducing-shopping-with-microsoft-edge/1870080?after=MjQuMTF8Mi4xfGl8MTB8MTMyOjB8aW50LDQyMTAwODQsMTg5ODQ3NA (last visited February 14, 2025).

CLASS ACTION COMPLAINT - 6

1  extension store.[6]

2      28.   Once an Internet user adds the Microsoft Shopping browser extension their web

3  browser, a small blue price tag icon will appear on their web browser in the corner of their search

4  bar:



7

15      29.   How Microsoft Shopping claims it works is that while an Internet user is shopping

16  for a product or service on an online merchant's website, the Microsoft Shopping browser extension

17  automatically searches for and tests available coupon codes at checkout for that product or service.[8]

18  If Microsoft Shopping finds a valid coupon code, it will then apply that coupon code to that Internet

19  user's shopping cart with the online merchant: Save money when you shop with Microsoft Edge. As

20  you add items to your cart, Edge actively scans the internet for available coupons and discount codes

21  to apply when you check out.[9]

22

---

[6] https://chromewebstore.google.com/detail/microsoft-
shopping/gkpkfpbiplhcnbfakenlikblbdgllhoh?hl=en (last visited February 14, 2025).

[7] https://www.microsoft.com/en-us/edge/shopping?form=MG0AU0&cs=2199494592 (last visited
February 14, 2025).

[8] *Id.*

[9] *Id.*

CLASS ACTION COMPLAINT - 7

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

30.     A Microsoft Shopping user will know whether the browser extension found any applicable coupons for the product or service that they are shopping for because the Microsoft Shopping price tag icon on their web browser will indicate the number of coupons that Microsoft Shopping found and the below window will also pop up automatically on an Internet user's screen:



31.     The Microsoft Shopping browser extension works on most major merchant's websites, including Amazon, Macy's, Walmart, Best Buy, and Target.

32.     In addition to searching for coupons, Microsoft Shopping also offers a free rewards program to its users.[10]

33.     This rewards program is a cashback program that gives Microsoft Shopping users back money for making certain purchases with participating merchant partners.[11] "Earn rewards on everything you buy. With Microsoft Edge, you earn cashback on every purchase from top retailers,

---

[10] https://www.microsoft.com/en-us/edge/shopping?form=MG0AU0&cs=2199494592 (last visited February 14, 2025).

[11] *Id.*

CLASS ACTION COMPLAINT - 8

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

grocery stores, and more."[12]



**<u>Content Creators and Affiliate Marketing</u>**

34.     Online merchants, like Amazon, Target, and Macy's, partner with affiliate marketers for the promotion of their products and services and provide commissions from the sale of those products and services to those affiliate marketers in exchange.

35.     An affiliate marketer is a third-party publisher who promotes a company's products or services in exchange for a commission.

36.     Plaintiff and Class Members are online creators who create content on websites such as YouTube, TikTok, Twitter, Facebook, and Instagram, and earn commissions for promoting products and services as affiliate marketers.

37.     Affiliate marketing generally works as follows[13]:

---

[12] https://www.microsoft.com/en-us/edge/features/shopping-cashback?msockid=35ac7c2746d564260b2769a5477d6515&esf=1&form=MA13FJ (last visited February 14, 2025).

[13] https://grin.co/blog/affiliate-marketing-for-beginners/ (last visited February 14, 2025).

CLASS ACTION COMPLAINT - 9

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

- **First**, an affiliate marketer, like a content creator, will partner with an online merchant to promote its products and services. As a part of the partnership, an online merchant will provide an "affiliate link" to the content creator. An affiliate link is a unique URL associated only with that specific content creator. When that link is clicked on, it will redirect a viewer of the content to the webpage of the product or service that the online merchant is selling and the content creator is promoting.

- **Second**, a content creator creates "content," promoting an online merchant's product or service. Examples of "content" include videos on YouTube and TikTok, Instagram and Facebook "stories," live streams on Twitch, and text posts on X (formerly known as Twitter).  The content creator will include the affiliate link with their content.

- **Third**, a content creator will post or stream that content on their social media accounts and their viewers, *i.e.* "followers," will view that content and have access to the affiliate link.

- **Fourth**, a content creator's viewer uses the affiliate link to view the online merchant's webpage of the product or service that the content creator was promoting. The viewer then purchases the product or service.

- And **fifth**, because the content creator's viewer purchased the online merchant's product or service using the affiliate link, the online merchant provides the content creator with a commission from the sale of the product or service. The commission rate that a content creator will receive varies depending on the

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

product or service being promoted[14]:

| Product Category | Affiliate Commissions (% of Sale) |
|---|---|
| Arts & Crafts | 12% |
| Beauty | 15-20% |
| Business | 20-25% |
| Clothing | 10-15% |
| Computers & Tech | 15-20% |
| Education | 20% |
| Family | 20-25% |
| Financial | 30-40% |
| Fitness | 10-20% |
| Food & Drink | 10-20% |
| Hair | 10% |
| Health | 20-30%+ |
| Home | 10-20% |
| Jewelry | 15-30% |
| Paleo | 10% |
| Pets | 10-20% |
| General Products | 10-20% |
| Recreation | 10% |
| Services | 30% |
| SaaS | 20-30% |
| Adult | 10-15%+ |

38.    Around 80% of affiliate marketers earn $80,000 a year or less from affiliate marketing, while top affiliate marketers can take in over $1 million[15]:

| Income | Share of Affiliate Marketers |
|---|---|
| Up to $80,000 | 80% |
| $80,000 to $1 Million | 15% |
| Over $1 Million | 1% |

39.    In 2023, the size of the affiliate marketing industry was $15.7 billion and, according

---

[14] https://www.refersion.com/blog/affiliates-negotiation/#:~:text=If%20they're%20underperforming%2C%20then,be%20time%20for%20a%20bonus (last visited February 14, 2025).

[15] https://www.demandsage.com/affiliate-marketing-statistics/ (last visited February 14, 2025).

CLASS ACTION COMPLAINT - 11

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

to a report by Astute Analytica, it is expected to grow to \$36.9 billion by 2030.[16]

40.     The affiliate marketing industry is profitable because it is an effective way to market products and services to consumers.

41.     According to the 2024 Modern Consumer Survey published by GRIN, the world's leading online creator management platform, 74% of consumers have purchased a product because a social media influencer has recommended it.[17]

42.     In a 2023 survey from Matter Communications, 69% of survey respondents were more likely to trust a social media influencer's recommendation of a product or service over information an online merchant had provided about its product or service.[18]

43.     Affiliate marketing currently results in 16% of all e-commerce sales in the United States.[19]

**Microsoft Shopping Hijacks Content Creators' Affiliate Links**

44.     An affiliate link is a custom URL assigned to an affiliate marketer, such as a content creator, by an online merchant.[20]  The URL includes the content creator's "affiliate ID", *i.e.* a specialized number or username, that allows the online merchant to attribute future sales to the correct affiliate.[21] The affiliate link allows the online merchant to credit the content creator with

---

[16] https://www.rewardful.com/articles/affiliate-marketing-statistics#:~:text=The%20affiliate%20marketing%20market%20size,reach%20%2415.7%20billion%20by%202024 (last visited February 14, 2025).

[17] https://www.businesswire.com/news/home/20240320786326/en/U.S.-Shoppers-Are-Under-the-Influence-74-of-Consumers-Have-Purchased-a-Product-Because-an-Influencer-Recommended-It (last visited February 14, 2025).

[18] https://www.shopify.com/blog/influencer-marketing-statistics (last visited February 14, 2025).

[19] https://www.forbes.com/sites/forbesagencycouncil/2017/04/21/how-affiliate-networks-have-taken-affiliate-marketing-mainstream/?sh=5cdbd827569d (last visited February 14, 2025).

[20] https://www.authorityhacker.com/what-are-affiliate-links/ (last visited February 14, 2025).

[21] *Id.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

commissions for any sales of their product or service that result from the content creator's marketing. [22]

45.    While affiliate links vary in appearance, the URL for those links generally contain the following common elements[23]:



46.    Once the content creator shares the affiliate link with the content that they posted on their social media accounts promoting an online merchant's product or service, an Internet user viewing the content can click on the affiliate link.[24] By clicking on the affiliate link, that Internet user will be directed to the page of the online merchant's website that is selling the promoted product or service.[25]

47.    When the viewer clicks the affiliate link, a small text file is stored on that Internet user's web browser that includes information about the content creator who provided the Internet user with the affiliate link.[26] The small text file is called a "cookie."

48.    Once a cookie is stored on an Internet user's web browser, the cookie tracks the Internet user's activity on the online merchant's website to determine whether the Internet user

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

CLASS ACTION COMPLAINT - 13

ultimately purchased the product or service associated with the content creator's affiliate link. [27]

49.    Depending on the online merchant that created an affiliated link for the content creator, a cookie associated with an affiliate link can be stored on an Internet user's web browser between 24 hours to 90 days or longer.[28] That means if an Internet user clicks on an affiliate link to view the product or service that a content creator has promoted, closes out of the online merchant's webpage for that product or service for whatever reason, but then returns to the online merchant's website to ultimately purchase the product or service, the content creator will still be rewarded with the commission from the sale.[29]

50.    This cookie-tracking process can be disrupted though. For example, if an Internet user clicks on affiliate links from different content creators that direct the Internet user to a webpage that sells the same product or service, the online merchant will only provide a commission for the sale of the product or service to the content creator associated with the last-used affiliate link of the purchaser.[30] This is called "last-click attribution model."[31]

51.    Unbeknownst to Plaintiff and Class Members, Microsoft has been exploiting the last-click attribution model with the Microsoft Shopping web browser extension for years, depriving Plaintiff and Class Members of their hard-earned commissions.

52.    If an Internet user with the Microsoft Shopping web browser extension clicks on a content creator's affiliate link for a product or service, they will be greeted with several different types of Microsoft Shopping pop-ups:

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

CLASS ACTION COMPLAINT - 14

- **<u>First</u>**, a Microsoft Shopping pop-up informing the Internet user that it has found coupons applicable to their purchase of the product or service. The pop-up will permit Internet users to click the "Apply" button.



- **<u>Second</u>**, while Microsoft Shopping may not find any coupons applicable to the product or service, Microsoft Shopping will still provide the Internet user with a pop-up informing of an option to activate cash back rewards.



53.    Once an Internet user clicks the buttons on any of these enticing pop-ups from the Microsoft Shopping browser extension, Microsoft discreetly opens a small new tab on the Internet user's web browser. This small tab then replaces the cookie associated with the affiliate link for the

CLASS ACTION COMPLAINT - 15

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

content creator with a cookie affiliated with Microsoft. This new cookie falsely indicates to the online merchant that it was actually Microsoft, and not the content creator, that referred the Internet user to the online merchant's website. With this bait-and-switch complete, Microsoft automatically closes the small tab with the Internet user none the wiser.

54.    Analyzing the network traffic on websites where the Microsoft Shopping browser extension is running demonstrates this cookie "bait-and-switch" in real-time.

55.    When a shopper clicks on an online creator's affiliate link in order to purchase a product or service that the creator is promoting and proceeds to the merchant's website to purchase that product or service, whether the creator will be credited with the referral and commission changes based on whether the Microsoft Shopping extension is activated and engaged.

56.    For example, if a user follows the affiliate links shared by internet personality Linus Tech Tips to purchase the processor advertised, a cookie associated with Linus Tech Tips is populated, allowing the merchant to credit Linus Tech Tips with the sale and provide Linus Tech Tips with a commission for referring the sale.



Affiliate Links shared by Linus Tech Tips.          Cookie Associating Linus Tech Tips with the Referral.

57.    However, upon engaging the Microsoft Shopping extension to "activate cash back," the affiliate cookie is surreptitiously replaced with a Microsoft-affiliated cookie, as depicted in the image below, resulting in Microsoft earning commission for the referral, despite playing no role in referring the buyer to the online merchant's website.

CLASS ACTION COMPLAINT - 16



| Name | Value | D... | P... | E... | S... | H... | S... | P... | C... | P... |
|---|---|---|---|---|---|---|---|---|---|---|
| campaign | 198_BingRebate... | .b... | / | 2... | 36 | | | | | M... |
| partner | 198%26Bing+Re... | .b... | / | 2... | 68 | | | | | M... |

Cookie Value  ☐ Show URL-decoded
198%26Bing+Rebates+by+Microsoft%262025-01-28+16%3a37%3a55.000

Following the activation of cash back on a merchant's website the Linus Tech Tips affiliate "partner" cookie is displaced and replaced with a Microsoft-affiliated "Bing Rebates by Microsoft" cookie.

58.    Online creators' cookies are similarly displaced, if a user chooses to try out a coupon offered by Microsoft Shopping instead of activating cash back.

59.     In other words, the result of Microsoft's programming ploy is that the online content creator is deprived of the commission they are owed, despite their role in referring an Internet user to the online merchant's website.

60.    In the meantime, the content creator who had put in the time and effort to create the promotional content for the online merchant's product or service, had a viewer of that content click on an affiliated link which led that viewer directly to the online merchant's web page, and whose affiliate link ultimately resulted in the sale of that product or service, is left with no commission.

61.    Microsoft's unlawful tactics are not novel. The scheme is known as "cookie stuffing." Cookie stuffing is a fraudulent affiliate marketing technique in which "the Web cookies used to determine the likely source of user traffic are overwritten without the user's knowledge."[32]

62.    As one academic research paper described the scheme:

---

[32] Neha Chachra, Stefan Savage & Geoffrey M. Voelker, *Affiliate Crookies: Characterizing Affiliate Marketing Abuse*, PROCEEDINGS OF THE 2015 INTERNET MEASUREMENT CONFERENCE (2015).

CLASS ACTION COMPLAINT - 17

instead of using the affiliate URL as a clickable link, a fraudulent affiliate may cause the browser to directly fetch her affiliate URL on a page controlled by her without any explicit clicks from the user, thereby tricking the affiliate program into returning a cookie that then identifies the fraudulent affiliate as the referrer for the user's transactions. As a result, not only does an affiliate program pay a non-advertising affiliate, but the fraudulent cookie overwrites any existing affiliate cookie that may have already been present, thereby potentially stealing the commission from a legitimate affiliate. Furthermore, cookie-stuffing fraud is typically completely opaque to an end user and goes against the advertising guidelines issued by the Federal Trade Commission for marketers, which require declaration of any financial relationship with advertisers.[33]

63.     Extensions that attempt to commit such improper cookie-stuffing, like Microsoft Shopping, are classified as "malicious code" by cybersecurity companies such as McAfee, because they attempt to alter cookies they are not authorized to alter.[34]

**Plaintiff's Experience**

64.     Plaintiff Tessa Rhodes is a content creator and social media influencer who has various YouTube accounts. Plaintiff Rhodes' primary YouTube account has garnered over 3 million total views since she started the account in April 2016, as a platform dedicated to teaching others how to teach children to swim.  Plaintiff Rhodes also runs an Amazon Associate account, which she uses to review and recommend products she has purchased from Amazon. On this second account, Plaintiff has over 265,000 views.

65.     On each of these accounts, Plaintiff also provides affiliate links to products that she recommends to followers and viewers. Plaintiff earns commissions through these affiliate links as part of the Amazon Associates affiliate program.

66.     On information and belief, some of Plaintiff's affiliate commissions were improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

---

[33] *Id.*

[34] McAfee Labs, *Malicious Cookie Stuffing Chrome Extensions with 1.4 Million Users* (Aug. 29, 2022), https://www.mcafee.com/blogs/other-blogs/mcafee-labs/malicious-cookie-stuffing-chrome-extensions-with-1-4-million-users/ (last visited February 14, 2025).

CLASS ACTION COMPLAINT - 18

67.     Until Microsoft Shopping's unlawful scheme was exposed along with several other cookie-stuffing coupon-extension schemes in December 2024, Plaintiff was not able to identify the cause of her missing affiliate commissions.

68.     If Microsoft had not utilized the Microsoft Shopping web browser extension to divert some of her commissions to Microsoft, Plaintiff would have earned additional commission payments from her affiliate links.

### Plaintiff's and Class Members' Damages

69.     Plaintiff and Class Members have all suffered damages as a direct and proximate result of Microsoft's practice of poaching their commissions from online merchants through the Microsoft Shopping browser extension.

70.     Microsoft has done nothing to compensate Plaintiff and Class Members for the loss of their commissions.

71.     Moreover, Plaintiff and Class Members have an interest in ensuring that Microsoft does not continue its practice of poaching their commissions from online merchants through the Microsoft Shopping browser extension.

### CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this action against Defendant individually and on behalf of other persons similarly situated.

73.     Plaintiff proposes the following Class and Subclass definitions, subject to amendment as appropriate:

> **National Class:** All persons or, if minors, their parents or guardians, who partnered with an online merchant to promote a product or service, were provided with an affiliate link by an online merchant for the promotion of a product or service, and were deprived of compensation from the online merchant for the sale of the product or service associated with the affiliate link because of Defendant's practice of using Microsoft Shopping to divert their commission-based compensation to Defendant (the "Class").

CLASS ACTION COMPLAINT - 19

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

**California Subclass:** All persons or, if minors, their parents or guardians, residing in California, who partnered with an online merchant to promote a product or service, were provided with an affiliate link by an online merchant for the promotion of a product or service, and were deprived of compensation from the online merchant for the sale of the product or service associated with the affiliate link because of Defendant's practice of using Microsoft Shopping to divert their commission-based compensation to Defendant (the "California Subclass").

74.    Excluded from the Class and Subclass are Defendant's officers, directors, and employees; any entity in which Defendant have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class and Subclass are members of the judiciary to whom this case is assigned, their families and members of their staff.

75.    Plaintiff reserves the right to amend or modify the Class or Subclass definition or create additional subclasses as this case progresses.

76.    <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. There are at least thousands of members of the Class and Subclass.

77.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.    Whether Defendant programmed the Microsoft Shopping browser extension to replace the cookie associated with an affiliate link with a cookie that wrongfully indicates to the online merchant that Microsoft originated the sale of a product or service rather than Class Members;

b.    Whether Defendant was wrongfully provided the commissions of Class Members by replacing the cookie associated with an affiliate link with a cookie that wrongfully indicates to the online merchant that Microsoft originated the sale of a product or service rather than an affiliate marketer;

CLASS ACTION COMPLAINT - 20

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

c. Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members;

d. Whether Defendant through its actions alleged herein violated the Computer Fraud and Abuse Act;

e. Whether Defendant through its actions alleged herein violated the California Comprehensive Computer Data Access & Fraud Act;

f. Whether Defendant through its actions alleged herein violated the California Unfair Competition Law; and

g. Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

78.   Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's commissions from online merchants for Internet users' purchase of products or services were diverted to Defendant like every other Class Members'.

79.   Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced at litigating class actions.

80.   Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that Defendant diverted their commissions in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

81.   Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class

CLASS ACTION COMPLAINT - 21

Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, to conduct this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

82.    Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a classwide basis.

## FRAUDULENT CONCEALMENT AND TOLLING

83.    Plaintiff and Class Members had neither actual nor constructive knowledge of the facts constituting their claim for relief. They did not discover, nor could have discovered through the exercise of reasonable diligence, Defendant's practice of converting the affiliate links of Plaintiff and Class Members to divert commissions intended for Plaintiff and Class Members for the sale of an online merchant's products or services to Defendant.

84.    Due to Defendant's fraudulent concealment of their wrongful conduct, the running of the statute of limitations has been tolled and suspended with respect to the claims and rights of action of Plaintiff and Class Members as a result of Defendant's practice.

## CLAIMS FOR RELIEF

### COUNT I
### Unjust Enrichment
### (*On behalf of Plaintiff and the Class*)

85.    Plaintiff re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

86.    Plaintiff's and Class Members' commissions from online merchants for the sale of

CLASS ACTION COMPLAINT - 22

products or services associated with their affiliate links have monetary value.

87.     Plaintiff and Class Members directly conferred a monetary benefit on Defendant by partnering with online merchants to promote a product or service, creating content to promote that product or service, including an affiliate link that would refer their viewers of that content to the webpage for the product or service so their viewers could purchase that product or service, and ultimately having a viewer purchase the online merchant's product or service which Defendant wrongfully claimed credit for by exploiting the lack-click attribution model using the Microsoft Shopping web browser extension.

88.     Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these wrongfully obtained commissions.

89.     Defendant enriched itself through the Microsoft Shopping web browser extension's replacement of cookies associated with affiliate links with a cookie indicating that Microsoft referred a customer to an online merchant's webpage for a product or service

90.     Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because that monetary benefit was obtained through the inequitable means previously alleged.

91.     Plaintiff and Class Members have no adequate remedy at law.

92.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the actual loss of commissions from online merchants for the sale of products or services resulting from Defendant's practice of poaching Plaintiff and Class Members' affiliate links; and (ii) the future loss of commissions from online merchants for the sale of products or services resulting from Defendant's practice of poaching Plaintiff and Class Members' affiliate links.

CLASS ACTION COMPLAINT - 23

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

93.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer injury and/or harm.

94.     Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them by diverting their affiliate link commissions.

**COUNT II**
**Interference with a Prospective Economic Advantage**
***(On behalf of Plaintiff and the Class)***

95.     Plaintiff re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

96.     Plaintiff and Class Members partner with online merchants to promote products and services in exchange for commissions.

97.     Plaintiff and Class Members create content, such as videos, infographics, posts, tweets, and "stories," promoting particular products or services of online merchants, and then share that content on their social media accounts to be viewed by Internet users.

98.     In that content, a content creator includes an "affiliate link" that is provided by the online merchant. The affiliate link will redirect a viewer of the content creator's content to the website of the online merchant that is selling the product or service that the content creator is promoting.

99.     The affiliate link is unique to the content creator and also contains data that is used to generate a tracking cookie that allows the online merchant to identify the affiliate marketer that should earn the commission for the sale of a product or service.

100.    Thus, if an Internet user clicks on a content creator's affiliate link and subsequently purchases the product or service, the content creator receives a commission from the online merchant for that Internet user's purchase.

CLASS ACTION COMPLAINT - 24

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

101.    Defendant interferes with the partnership between Plaintiff and Class Members and online merchants through Microsoft Shopping despite being aware that partnerships between online merchants and affiliate marketers exist.

102.    Defendant, using the Microsoft Shopping web browser extension, intentionally replaced the tracking cookies associated with Plaintiff's and Class Members' affiliate links with tracking cookies associated with Microsoft Shopping.

103.    The tracking cookies that Defendant intentionally replaced would have permitted the online merchant to identify Plaintiff and Class Members as the rightful recipients of commissions earned from the sale of the products or services associated with the affiliated links.

104.    As a result, Plaintiff and Class Members who promoted the online merchants' products or services, referred customers to these online merchants' webpages for these products and services, and had those customers ultimately purchase the online merchants' products or services were deprived of their rightfully-earned commissions.

105.    Because Plaintiff and Class members were deprived of their rightfully-earned commissions, they sustained harm as a direct and proximate result of Defendant's tortious interference with prospective economic advantage. Plaintiff and Class Members accordingly seek damages in an amount to be proven at trial, as well as injunctive relief barring further interference.

## COUNT III
### Intentional Interference with Contractual Relations
### *(On behalf of Plaintiff and the Class)*

106.    Plaintiff re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

107.    Plaintiff and Class Members have ongoing, valid, and enforceable contractual agreements with online merchants to promote products and services in exchange for commissions.

CLASS ACTION COMPLAINT - 25

108.    Microsoft knew that online merchants have these ongoing contractual relationships with Plaintiff and Class Members, under which Plaintiff and Class Members receive commissions from online merchants via affiliate links under a last-click-attribution model.

109.    Microsoft intentionally disrupted this contractual relationship by intentionally replacing the affiliate cookies associated with Plaintiff's and Class Members' affiliate links with tracking cookies associated with Microsoft Shopping.

110.    Because Plaintiff and Class members were deprived of their rightfully-earned commissions, they sustained harm and economic injury as a direct and proximate result of Microsoft's tortious interference with contractual relations. Plaintiff and Class Members accordingly seek damages in an amount to be proven at trial, as well as injunctive relief barring further interference.

**COUNT IV**
**Conversion**
**(*On behalf of Plaintiff and the Class*)**

111.    Plaintiff re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

112.    Plaintiff and Class Members had a property interest in the commissions for the purchases of products or services of online merchants by individuals using the affiliated links associated with Plaintiff and Class Members.

113.    By programming the Microsoft Shopping web browser extension to replace the tracking cookies associated with Plaintiff's and Class Members' affiliated links with a tracking cookie associated with Microsoft, resulting in online merchants crediting Defendant with the sale of their products or services rather than Plaintiff and Class Members, Defendant misappropriated the commissions that online merchants owed to Plaintiff and Class Members for the promotion of their products or services.

CLASS ACTION COMPLAINT - 26

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

114.    As a direct and proximate cause of Defendant's conduct, Plaintiff and Class Members have been harmed by the loss of their commissions.

115.    Plaintiff and Class Members seek all damages and consequential damages proximately caused by Defendant's conduct.

**COUNT V**
**Computer Fraud and Abuse Act**
**18 U.S.C. § 1030**
***(On behalf of Plaintiff and the Class)***

116.    Plaintiff re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

117.    The Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, makes it unlawful for anyone to "knowingly and with intent to defraud, access[] a protected computer without authorization, or exceed[] authorized access, and by means of such conduct further[] the intended fraud and obtain[] anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period." 18 U.S.C. § 1030(a)(4).

118.    Through its browser extension, Microsoft knowingly and with intent to defraud exceeded its authorized access to the browsers and computers of users that downloaded its browser extension, and through this conduct furthered its fraudulent scheme to wrongfully obtain the affiliate commissions of Plaintiff and Class Members.

119.    Microsoft exceeded its authorized access to the computers of its users by altering or removing affiliate cookies that Microsoft was not entitled to alter or remove. Cookie-stuffing extensions, like Microsoft Shopping, are considered "malicious code" that alter cookies they are not

CLASS ACTION COMPLAINT - 27

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

authorized to alter.[35] Microsoft exceeded its authorized access by exploiting vulnerabilities in the restrictions placed on browser extensions and by exploiting vulnerabilities in the restrictions put in place by affiliate networks to prevent cookie stuffing.

120.    As described above, when a user activates the Microsoft Shopping extension it surreptitiously opens a new browser tab in the background to avoid detection by the user. Microsoft Shopping then artificially mimics a genuine click on an affiliate marketing link associated with its own affiliate marketing account in this hidden browser tab, causing the merchant's website to replace the affiliate cookies of Plaintiff and the Class with Microsoft Shopping's affiliate cookie.

121.    This technically sophisticated technique is designed to exploit vulnerabilities in the restrictions placed on browser extensions, and in the technical restrictions put in place by affiliate networks, to allow Microsoft Shopping to artificially "trick" the user's browser and the merchant's website into replacing the legitimate affiliate cookies of Plaintiff and Class Members with the illegitimate affiliate cookies of Microsoft Shopping.

122.    Users of Microsoft Shopping do not expect the Microsoft Shopping extension to operate in this manner or to alter this data, and the extension's cookie-stuffing functionality is not disclosed in the applicable terms of service or privacy policy, or in any information that is disclosed to users who install the extension in the ordinary course.

123.    Microsoft Shopping's malicious code is executed in the browsers of computers that are used in or affect interstate commerce, and thus meet the definition of "protected computer" under the CFAA.

124.    Microsoft's substitution of its own affiliate cookies for the affiliate cookies of

---

[35] McAfee Labs, *Malicious Cookie Stuffing Chrome Extensions with 1.4 Million Users* (Aug. 29, 2022), https://www.mcafee.com/blogs/other-blogs/mcafee-labs/malicious-cookie-stuffing-chrome-extensions-with-1-4-million-users/ (last visited February 14, 2025).

CLASS ACTION COMPLAINT - 28

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Plaintiff and Class Members impairs the integrity and availability of the data contained in the original affiliate cookies designating Plaintiff and Class Members as the proper party to receive an affiliate commission. As a result of Microsoft's unlawful scheme, Plaintiff and Class Members have lost substantial revenue from these highly valuable commissions that were improperly diverted to Microsoft. Thus, Plaintiff and Class Members have suffered damage and loss well in excess of $5,000 during a year within the relevant period as a result of Microsoft's conduct.

125.    Plaintiff and the Class seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the CFAA.

## COUNT VI
### California Comprehensive Computer Data Access & Fraud Act
### Cal. Penal Code § 502
### *(On behalf of Plaintiff and the California Subclass)*

126.    Plaintiff re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

127.    Under the California Comprehensive Computer Data Access & Fraud Act (CDAFA), Cal. Penal Code § 502, a person or entity is liable under the statute if it:

(1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.
. . .
(4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.
. . .
(8) Knowingly introduces any computer contaminant into any computer, computer system, or computer network.

128.    Through its browser extension, Microsoft knowingly accesses and without permission alters, damages, deletes, and/or destroys the affiliate cookie data of Plaintiff and Class Members, in order to both (a) execute its unlawful and fraudulent scheme and (b) wrongfully control

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

or obtain money, property, or data through the diversion of affiliate commissions that rightfully belong to Plaintiff and Class Members.

129.    Through its browser extension, Microsoft knowingly accesses and without permission adds, alters, damages, deletes, and/or destroys the affiliate cookie data of Plaintiff and Class Members, which resides on a covered computer system.

130.    Under CDAFA, a "computer contaminant" is "any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information." Cal. Penal Code § 502(b)(12).

131.    Plaintiff and Class Members have an ownership interest in the affiliate cookie data that is modified, damaged, and/or destroyed by the Microsoft Shopping extension. The Microsoft Shopping extension contains computer instructions that are designed to modify, damage, and/or destroy the affiliate cookie data of Plaintiff and Class Members without their intent or permission, thus meeting the definition of "computer contaminant" under CDAFA. Microsoft knowingly introduces this computer contaminant into the computers of users of its browser extension in violation of CDAFA.

132.    Microsoft did not request or receive permission from either the users of its browser extension or Plaintiff and Class Members to add, alter, damage, delete, or destroy the affiliate cookie data of Plaintiff and Class Members residing on users' browsers, nor did Microsoft request or receive permission to divert the affiliate commissions of Plaintiff and Class Members to Microsoft.

133.    The Microsoft Shopping extension's cookie-stuffing functionality is not disclosed in the applicable terms of service or privacy policy, or in any information that is disclosed to users who install the extension in the ordinary course.

134.    As a result of Microsoft's unlawful scheme, Plaintiff and Class Members have lost

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

substantial revenue from highly valuable commissions that were improperly diverted to Microsoft.

135.    Plaintiff and Class Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the CDAFA.

136.    Because Microsoft's conduct is willful and fraudulent, Plaintiff and Class Members seek punitive or exemplary damages, as available under CDAFA. Microsoft concealed the material fact that it was diverting affiliate commissions from content creators to itself, depriving Plaintiff and Class Members of substantial commissions.

<u>**COUNT VII**</u>
**California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On behalf of Plaintiff and the California Subclass)**

137.    Plaintiff re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

138.    California's Unfair Competition Law (UCL), prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200, *et seq*.

139.    Microsoft's conduct violates the "unlawful" prong of the UCL because, as described above, Microsoft's scheme constitutes unjust enrichment, conversion, tortious interference with a prospective and ongoing business relationship, and a violation of CDAFA.

140.    Microsoft's conduct violates the "unfair" prong of the UCL because it unfairly diverts Plaintiff's and Class Member's affiliate commissions to Microsoft in violation of California public policy, as described above. Microsoft's scheme provides no legitimate benefit or utility to consumers or the marketplace while causing significant harm to Plaintiff and Class Members.

141.    As a result of Microsoft's unlawful scheme, Plaintiff and Class Members have lost substantial revenue from highly valuable commissions that were improperly diverted to Microsoft.

142.    Plaintiff and Class Members seek restitution, injunctive relief, and all other legal or equitable relief available under the UCL, as well as attorneys' fees and costs as provided under

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

California law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

a)     For an Order certifying this action as a Class Action and appointing Plaintiff as Class Representative and his counsel as Class Counsel;

b)     For equitable relief enjoining Defendant from engaging in wrongful conduct complained of herein and to reform the practice of Defendant's Microsoft Shopping web browser extension replacing cookies associated with affiliate links of Plaintiff and Class Members with Microsoft's own affiliate cookies;

c)     For an award of actual damages, compensatory damages, statutory damages, nominal damages, and/or statutory penalties in an amount to be determined, as allowable by law;

d)     For an award of punitive damages, as allowable by law;

e)     For an award of attorneys' fees, as allowable by law;

f)     Pre- and post-judgment interest on any amounts awarded; and

g)     Such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMAND**

Under Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: February 14, 2025                    Respectfully submitted,

**TOUSLEY BRAIN STEPHENS PLLC**

By: */s/Jason T. Dennett*
Jason T. Dennett, WSBA #30686
jdennett@tousley.com
By: */s/Joan M. Pradhan*
Joan Pradhan, WSBA #58134
jpradhan@tousley.com
1200 Fifth Avenue, Suite 1700

CLASS ACTION COMPLAINT - 32

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Seattle, Washington 98101
Telephone: (206) 682-5600

James J. Pizzirusso*
Amanda V. Boltax *
Ian E. Engdahl*
**HAUSFELD LLP**
888 16th Street N.W., Suite 300
Washington, DC 20006
(202) 540-7200
jpizzirusso@hausfeld.com
mboltax@hausfeld.com
iengdahl@hausfeld.com

Steven M. Nathan*
**HAUSFELD LLP**
33 Whitehall Street
Fourteenth Floor
New York, NY 10004

**LITE DEPALMA GREENBERG
& AFANADOR, LLC**
Joseph J. DePalma*
Catherine B. Derenze*
Collin J. Schaffhauser*
570 Broad St., Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
jdepalma@litedepalma.com
cderenze@litedepalma.com
cschaffhauser@litedepalma.com

*pro hac vice* anticipated

*Counsel for Plaintiff and proposed class*

CLASS ACTION COMPLAINT - 33